# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JANANNA C. CASTILLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 10-1052-JWL** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error as alleged by Plaintiff, the court ORDERS that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.    Background

Plaintiff applied for SSI on June 28, 2005 alleging disability since May 1, 1995. (R. 14).[1]  The application was denied initially and upon reconsideration, and Plaintiff

---

[1]The application is not in the record, but Plaintiff does not dispute this finding.

requested a hearing before an administrative law judge (ALJ).  (R. 14, 24-29, 33-37).

Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before

ALJ Robert J. Burbank on October 29, 2007.  (R. 14, 332-50).  At the hearing, testimony

was taken from Plaintiff and from a vocational expert.  (R. 14, 332-33).

The ALJ issued his decision on December 17, 2007 finding that Plaintiff has the

residual functional capacity (RFC) for a range of sedentary work, and that considering

Plaintiff's RFC, age, education, and work experience, there are a significant number of

jobs in the economy which Plaintiff is capable of performing.  (R. 14-23).  Therefore, he

determined Plaintiff is not disabled within the meaning of the Act, and denied her SSI

application.  (R. 23).  Plaintiff sought, but was denied Appeals Council review of the

decision.  (R. 5-10).  Therefore the ALJ's decision is the final decision of the

Commissioner, and Plaintiff now seeks judicial review of that decision.  (R. 5); Blea v.

Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Wall v. Astrue, 561

F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)); see also, 42 U.S.C.

§ 1383(c)(3) (final decision in an SSI case "shall be subject to judicial review as provided

in section 405(g) of this title").  Section 405(g) of the Act provides that, "The findings of

the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  The court must determine whether the factual findings are supported by

substantial evidence in the record and whether the ALJ applied the correct legal standard.

Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education,

and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 416.920 (2007); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses RFC. 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show jobs in the national economy within Plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ improperly weighed the opinion of her treating physician, failed to assess RFC as required by Social Security Ruling (SSR) 96-8p, and erred in determining the credibility of Plaintiff's allegations of symptoms.  The Commissioner argues that the ALJ properly weighed the treating physician opinion, properly evaluated the credibility of Plaintiff's allegations, and properly assessed Plaintiff's RFC.  The court begins its analysis, as did Plaintiff, with consideration of the treating source opinion.  But, because the evaluation of credibility and the weighing of medical opinions are each part of a proper RFC assessment, the court addresses the alleged errors in RFC assessment only after considering Plaintiff's allegations of error in weighing the treating source opinion and in making the credibility determination.

III.    **Evaluation of the Treating Source Opinion**

Plaintiff claims the ALJ failed to accord sufficient weight to the medical opinion of her treating psychiatrist, Dr. Susan Brewer, improperly deciding to withhold controlling weight from the opinion without sufficient explanation or discussion, and failing to consider what lesser weight the opinion should be given in accordance with the regulations and SSR 96-2p.  She argues that the ALJ failed to perform the required analysis, and rejected Dr. Brewer's opinion based merely upon his own subjective interpretation of the treatment notes.  The Commissioner argues that the ALJ properly considered Dr. Brewer's opinion and provided legitimate reasons for the weight it was

given. Although the ALJ could have been more specific in his analysis and detailed in his explanation, the court finds no error in his evaluation of Dr. Brewer's opinion.

The Tenth Circuit has explained the nature of the inquiry regarding a treating source medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must also confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. (quoting SSR 96-2p). Those factors are: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship, including treatment provided and kind of examination or testing performed; (3) degree to which physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention tending to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Here, the ALJ stated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 416.927[2] and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (R. 18). In making his RFC assessment, the ALJ summarized and discussed the record evidence; including Plaintiff's testimony and the medical opinions. (R. 19-21).

The ALJ specifically discussed Dr. Brewer's treatment notes, stating that Dr. Brewer noted Plaintiff's depression did not cause her problems with energy level or concentration; noting that Dr. Brewer's treatment notes showed Plaintiff started therapy for relationship problems, but did not follow through, so therapy was discontinued and Plaintiff did not appear to need it; and noting Plaintiff's daily activities reported in Dr. Brewer's ComCare treatment notes. (R. 21) (citing Ex. 11F pp. 133, 134-35, 148, 153, 155 (R. 268, 270, 275, 288-89, 290)).

---

[2]20 C.F.R. § 416.927 is the regulation directing how the Commissioner weighs medical opinions in evaluating applications for SSI. 20 C.F.R. § 404.1527 is identical in every relevant respect, but applies only to applications for disability insurance benefits (DIB). Because Plaintiff did not apply for DIB in this case, the ALJ did not apply 20 C.F.R. § 404.1527 as suggested by Watkins, 350 F.3d at 1300 .

Dr. Brewer provided a "Medical statement" containing her diagnosis, her assessment of Plaintiff's symptoms, and her opinion regarding Plaintiff's mental limitations. (R. 220-22). The ALJ summarized the statement, and discussed the weight he gave it in his RFC assessment:

> Susan Brewer, M.D. completed a Medical statement concerning depression for Social Security disability claim on August 31, 2007. Dr. Brewer determined that the claimant had moderate limitations in a number of areas of mental functioning. The claimant's symptoms are related to interpersonal conflict, overdependence on others, poor coping skills and poor problem solving skills. (Exhibit 9F)
>
> * * *
>
> Dr. Brewer determined that the claimant had a number of moderate limitations in mental functioning. She further indicated that the claimant's morbid obesity and associated health problems would limit what the claimant could physically perform. (Exhibit 9F) The moderate limitations simply are not supported by the progress notes from ComCare. Mental status exams clearly show that the claimant is doing well. She is oriented times three. Her mood is improved and she is no longer feeling depressed or as anxious. Her affect is congruent, neutral and relaxed and her memory, attention and concentration are intact. Thought form is logical and linear with no indication of psychotic process. The claimant denies suicidal and homicidal ideation. (Exhibit 11F/156) Further, Dr. Brewer stated that the claimant may be capable of work with simple tasks, which is consistent with this residual functional capacity.

(R. 21).

Plaintiff claims the ALJ failed to explain how his observations regarding mental status exams establish that Dr. Brewer's progress notes do not support her opinion regarding moderate mental limitations. However, it is impossible for the ALJ to cite something which is not in Dr. Brewer's notes (support for the moderate limitations

opined) to support his finding that it is not there. The court fails to understand how the finding could be better explained. The ALJ's finding stands or falls on its own. To show that the ALJ's finding is erroneous, it is Plaintiff's burden to point to something in Dr. Brewer's treatment notes which is contrary to the ALJ's finding. This she did not do, and the court does not find such evidence. Moreover, the court finds as did the ALJ, that Dr. Brewer's progress notes from ComCare do not support her assessment of moderate limitations. Nowhere in Dr. Brewer's notes is there a suggestion that Plaintiff has the extensive moderate limitations opined by Dr. Brewer.

The ALJ did note that the records showed Plaintiff's mood is improved. Although the ALJ specifically cited only one mental status examination showing relatively benign (rather than moderate) limitations, every mental status exam performed by Dr. Brewer is to a similar effect. (R. 267, 270, 273, 275, 278, 281, 284, 286, 289); but see, (R. 291, 293) (intake summary and first medication evaluation: not completed by Dr. Brewer, but by a social worker and a nurse practitioner, respectively) (affect constricted, mood depressed, tearful, flat, concrete, interested, confused, memory is fair to poor, has fleeting suicidal thoughts). Moreover, Plaintiff does not point to any evidence from Dr. Brewer's notes which supports the moderate limitations opined. The burden in a Social Security case is on the Plaintiff to prove disability, it is not the Commissioner's burden to prove Plaintiff is not disabled. The Commissioner's only burden is at step five to show that jobs exist in the economy within the limitations proven by Plaintiff in the first four steps of the process. As the ALJ found, Dr. Brewer's opinion regarding moderate mental limitations

is not consistent with her treatment notes. Therefore, the ALJ properly denied the opinion controlling weight.

Plaintiff cites Dr. Brewer's narrative explanation of her opinion, and claims the ALJ misconstrued that explanation in finding it was consistent with the RFC assessed. As Plaintiff asserts, Dr. Brewer explained that Plaintiff "may be capable of work with simple tasks, but morbid obesity and associated health problems would limit what tasks she would be able to physically perform, and for how long she could perform them." (Pl. Br. 9) (quoting R. 222). The ALJ found this statement consistent with the RFC he assessed. Plaintiff claims the ALJ failed to recognize Dr. Brewer left open the question which tasks Plaintiff could perform and how long she could perform them.

While Plaintiff is correct that Dr. Brewer expressed concern that Plaintiff's physical problems would limit the tasks she could perform and how long she could perform them, the fact remains, as the ALJ noted, that Dr. Brewer recognized Plaintiff could perform simple tasks. Dr. Brewer did not express an opinion as to the limitations presented by Plaintiff's physical problems, so the ALJ did not (and need not) explicitly relate those limitations to Dr. Brewer's opinion. However, he did address the record evidence regarding those limitations, and determined that Plaintiff is able to lift and/or carry ten pounds both frequently and occasionally, to sit six hours in an eight-hour workday, and to stand and/or walk two hours in an eight-hour workday. (R. 18-21). Contrary to Plaintiff's argument, the ALJ addressed and resolved the questions left open

by Dr. Brewer, and as the ALJ found, Dr. Brewer's opinion is consistent with the RFC he assessed.

Plaintiff also claims the ALJ determined Dr. Brewer's opinion was not worthy of significant weight, but failed to discuss the regulatory factors for weighing medical opinions, and merely rejected Dr. Brewer's opinion based upon his own interpretation of Dr. Brewer's treatment notes. The court does not agree. First, the ALJ specifically stated he considered the medical opinions in accordance with the Social Security Rulings and with 20 C.F.R. § 416.927. (R. 18). As Plaintiff argues, those SSRs and that regulation explain the criteria for weighing medical opinions and set out the regulatory factors to be considered in that process. The ALJ stated he applied those criteria, and the court's general practice is "to take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173. Plaintiff provides no compelling reason for the court to deviate from the general practice in this case.

The court does not require a formalistic factor-by-factor analysis in weighing medical opinions so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). Plaintiff acknowledges that the ALJ did not accord controlling weight to Dr. Brewer's opinion, and argues that he gave it no weight. The court does not read the decision so narrowly.

Dr. Brewer opined that Plaintiff has mild restrictions of activities of daily living, moderate difficulty maintaining social functioning, and no deficiencies of concentration; and that it is "hard to judge" whether Plaintiff has had repeated episodes of decompensation. (R. 220). She opined that Plaintiff is moderately impaired in the mental abilities to: understand, remember, and carry out detailed instructions; perform activities within a schedule, maintain attendance, and be punctual; sustain an ordinary routine without supervision; complete a normal workday or workweek without psychological interruptions and perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting. (R. 221-22). As the ALJ noted, Dr. Brewer found that Plaintiff's symptoms relate to interpersonal conflict, overdependence on others, poor coping skills, and poor problem solving skills; and opined that Plaintiff may be capable of work with simple tasks, but that her physical health problems would limit the tasks performed and how long she could perform them.

The state agency reviewer provided opinions in a Mental RFC Assessment form and a Psychiatric Review Technique form. (R. 191-209) (Exs. 6F, 7F). He found Plaintiff has mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties maintaining concentration, persistence, and pace; and no episodes of decompensation. (R. 201). He found Plaintiff is moderately limited in the mental abilities to understand, remember, and carry out detailed instructions, and to maintain attention and concentration for extended periods. (R. 206).

The ALJ applied the Commissioner's psychological review technique in accordance with 20 C.F.R. § 416.920a, and found that Plaintiff has mild restrictions in activities of daily living; mild difficulties in social functioning; moderate difficulties with concentration, persistence, or pace; and no episodes of decompensation. (R. 17-19). He stated his reasons, and cited record evidence in support of the findings. He stated he had "translated [the psychiatric review technique findings] into work-related functions in the residual functional capacity assessment" included in the decision. (R. 18). Plaintiff does not claim the ALJ erred at step two or step three of the evaluation process.

The ALJ agreed with the state agency reviewer's opinions reflected in Exhibits 6F and 7F. (R. 21) (citing Exs. 6F, 7F). In agreeing with the state agency reviewer's opinion, the ALJ thereby agreed with Dr. Brewer's opinion of moderate limitations in the abilities to understand, remember, and carry out detailed instructions. However, the ALJ found Dr. Brewer's opinion regarding moderate limitations were not supported by her treatment notes, and he implicitly disagreed with Dr. Brewer's opinion regarding moderate difficulty in maintaining social functioning and moderate limitations in the abilities to perform activities within a schedule, maintain attendance, and be punctual; to sustain an ordinary routine without supervision; to complete a normal workday or workweek without psychological interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. In making his evaluation, the ALJ refused to accord

controlling weight to Dr. Brewer's opinion, but he accepted Dr. Brewer's narrative explanation in which she acknowledged the Plaintiff may be mentally capable of work with simple tasks, but was limited by her physical problems. Consequently, he interpreted Dr. Brewer's opinion consistently with her treatment notes, with her narrative explanation, with the other record medical evidence, and with the opinions of the state agency reviewer, found that opinion (as interpreted and as expressed in Dr. Brewer's narrative explanation) to be consistent with the RFC assessed, and accorded weight to that opinion as interpreted. (R. 21). While the ALJ did not state his rationale precisely, a fair reading of the decision supports the court's understanding. Therefore, although the decision is not as specific as the court might desire, it is sufficiently specific to make clear the weight the ALJ gave to the treating source's opinion and the reasons for that weight, as required by the decisions in <u>Oldham</u> and <u>Watkins</u>. More is not required. The court finds no error.

## IV.    The Credibility Determination

Plaintiff claims the ALJ failed to provide a proper credibility determination, that he merely listed the evidence of record and made a summary conclusion that Plaintiff's allegations are not credible, without explaining which allegations he did not believe or why he did not believe them. (Pl. Br. 15). The Commissioner suggests that the ALJ did not find that some of Plaintiff's allegations were credible and some were incredible, but rather found that Plaintiff's allegations of symptoms are not as severe in their intensity, persistence, or limiting effect as Plaintiff alleges. (Comm'r Br. 8). He argues that the

ALJ properly determined Plaintiff's allegations of symptoms are not fully credible.  Id. at

7-10.  Although the ALJ gave few reasons for discounting Plaintiff's allegations of

symptoms, those reasons are supported by record evidence, and in the circumstances the

court finds no error.

As Plaintiff's brief suggests, in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987) the

Tenth Circuit provided a framework for the proper analysis of a claimant's allegations of

symptoms.  (Pl. Br. 14-15).  In accordance with that framework, the court is to "consider

(1) whether Claimant established a pain-producing impairment by objective medical

evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and

the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the

evidence, both objective and subjective, Claimant's pain is in fact disabling."  Thompson,

987 F.2d at 1488 (citing Luna).  The court recognizes a non-exhaustive list of factors

which should be considered in the credibility determination, including "the levels of

medication and their effectiveness, the extensiveness of the attempts (medical or

nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily

activities, subjective measures of credibility that are peculiarly within the judgment of the

ALJ, the motivation of and relationship between the claimant and other witnesses, and the

consistency or compatibility of nonmedical testimony with objective medical evidence."

Id., 987 F.2d at 1489.  The regulations also suggest relevant factors to be considered in

evaluating credibility which overlap and expand upon the factors stated by the court:

Daily activities; location, duration, frequency, and intensity of symptoms; factors

precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 416.929(c)(3)(i-vii).

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Hackett, 395 F.3d at 1173 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)). Moreover, the Tenth Circuit Court of Appeals has condemned the practice of dismissing plaintiff's allegations of symptoms on the strength of a boilerplate recitation of the law. White, 287 F.3d at 909 (citing Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995) (where the ALJ merely notes the law governing assessment of credibility, discusses the evidence in general terms, and makes a conclusory finding that the evidence does not support plaintiff's allegations, remand is necessary for the ALJ to link his findings to the evidence)).

The ALJ summarized Plaintiff's allegations regarding the effects of her symptoms:

> The claimant testified that she has lower back pain and left leg problems that make it difficult to stand and walk. She gets a motorized cart when she goes shopping. She lies down about twice a day for 20 minutes due to back pain but sitting does not cause her any problems. She testified that she sometimes has shortness of breath and gets tired a lot. The claimant testified that she does not have any side effects from the medication she takes for diabetes, hypertension and depression. She admitted that medication helps her depression. She cannot concentrate or focus for very long and is about 50% slower than she used to be. She has bad days once or twice a month.

(R. 19). The ALJ found that Plaintiff's medically determinable impairments of morbid obesity, depression, diabetes, and hypertension could reasonably produce the symptoms alleged, but that Plaintiff's allegations "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." Id. In other words, the ALJ found that Plaintiff has the symptoms she alleges, but that those symptoms are not of disabling severity.

In supporting his credibility determination, the ALJ summarized the evidence regarding Plaintiff's symptoms. (R. 20-21). He noted Plaintiff is markedly overweight, with limited range of motion and other attendant limitations, but that she only has mild difficulty with orthopedic maneuvers and does not use an assistive device, and that gross motor function is normal. (R. 20). He noted Plaintiff complains of low back pain from time to time, but that x-rays of the lumbar spine are normal, her pain resolves within a short time, and she has not been given any functional restrictions. Id. The ALJ noted that Plaintiff was started on medication in January 2006, and that it helped her depression; that by March 10, 2006 her mood was improved with the medication; that Plaintiff seemed to

do well without therapy and did not appear to need it; and that Dr. Brewer noted depression did not appear to cause her problems with her energy level or concentration. Id. at 20-21. The ALJ noted that Plaintiff drives her brother around when he needs a ride, takes care of her elderly mother, baby sits her step grandchildren, and took a vacation to Mexico with her family, and he reached the conclusion that, "Despite allegations of symptoms and limitations preventing all work, the claimant's activities suggest that she can do more than she alleges." Id. at 21.

Although Plaintiff claims the ALJ failed to explain or support which parts of Plaintiff's testimony he did not believe, and why, the ALJ's discussion of the evidence reveals that the ALJ accepted that Plaintiff has symptoms of back and leg problems, shortness of breath sometimes, fatigue, and decreased concentration. (R. 19-21). However, as the Commissioner's brief suggests, the ALJ found that the symptoms did not produce effects as severe as alleged by Plaintiff. As summarized above, the ALJ specifically expressed the evidentiary factors tending to indicate that Plaintiff's symptoms are not of disabling severity, and do not preclude work activity (only mild difficulty with orthopedic maneuvers, does not use an assistive device, gross motor function is normal, lumbar spine x-rays are normal, pain resolves within a short time, not given any functional restrictions, antidepressant helped, mood was improved, therapy unnecessary, depression not causing problems with energy level or concentration, drives brother around, cares for elderly mother, and babysits step grandchildren).

Plaintiff's argument focuses on the ALJ's discussion of Plaintiff's activities, and argues that those activities were done under duress or were only temporary. Even if Plaintiff's argument is correct, it does not change the fact that Plaintiff was doing the activities despite her testimony that her symptoms are so severe as to prevent work activity. Moreover, Plaintiff's brief does not address the other factors addressed by the ALJ which also tend to indicate her symptoms are not of disabling severity. Plaintiff points to no record evidence other than her own testimony which establishes that her symptoms prevent performance of the RFC assessed by the ALJ. The ALJ evaluated all of the evidence, including Plaintiff's testimony, and determined Plaintiff's symptoms are not as severe as alleged. The ALJ has provided a credibility determination based upon the correct legal standard, and that determination is not merely boilerplate language or a conclusory finding, but affirmatively links the credibility determination to substantial evidence in the record. The court finds no error in the ALJ's credibility determination.

## V.     RFC Assessment

In a final allegation of error, Plaintiff claims the ALJ erred in his RFC assessment because he failed to follow SSR 96-8p. Specifically, she claims the ALJ failed to relate his RFC to specific evidence and failed to provide a narrative discussion citing specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discussing how the plaintiff is able to perform sustained work activities, and describing the maximum amount of each work activity the plaintiff can perform. The Commissioner argues that the ALJ properly considered Plaintiff's RFC.

19

As Plaintiff's brief suggests, SSR 96-8p provides a framework for RFC assessment. The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2010). The Ruling includes narrative discussion requirements for the RFC assessment:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

Id. at 149.

The narrative discussion must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities. Id. at 149-50. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion. Id. at 150.

As discussed above, the court found no error in the ALJ's credibility determination or in his evaluation of the medical opinion of Dr. Brewer. Therefore, what remain at issue are the requirements from the quoted portion of SSR 96-8p and the ALJ's consideration of any medical opinions other than that of Dr. Brewer.

Plaintiff argues that, "While the ALJ does provide a summary of the medical evidence before reciting the RFC, he fails to link the RFC to any of the medical evidence." (Pl. Br. 12). The point of this argument is unclear. If Plaintiff is arguing that the ALJ failed to provide a pinpoint citation to medical evidence in the record for each RFC finding, that is not the standard required. What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment.

If, on the other hand, Plaintiff is arguing broadly that the ALJ did not support his RFC assessment with record evidence, or even record <u>medical</u> evidence, she is mistaken. The ALJ's narrative discussion of his RFC assessment appears at pages five through nine of his decision (R. 18-22), and in that discussion, he cites specific medical facts and nonmedical evidence upon which he relied in making his assessment.

As to the ALJ's mental RFC assessment, the court previously addressed how that assessment was made with respect to Dr. Brewer's opinion, and found no error in that regard. <u>Supra</u>, 11-14. The only thing to be added to that discussion at this point is that the ALJ also discussed the mental status examination of a consultant psychologist, Dr. Allen, and that examination provides additional support for the ALJ's mental RFC assessment.[3] (R. 20) (citing Ex. 4F (R. 181-84)). A proper understanding of the ALJ's

---

[3]The court notes that although it did not specifically identify Dr. Allen's report in its discussion above regarding the ALJ's evaluation of Dr. Brewer's opinion, that report is implicit in the discussion, wherein the court noted that the ALJ "interpreted Dr. Brewer's opinion consistently with her treatment notes, with [Dr. Brewer's] narrative explanation,

analysis of the evidence, as previously explained in the court's consideration of the weight accorded Dr. Brewer's opinion, will not support Plaintiff's argument that the ALJ's mental RFC assessment "was based primarily on review of the consultative mental status examination performed by Molly Allen, Psy.D." (Pl. Br. 14) . The ALJ's assessment was based primarily upon Dr. Brewer's opinion after discounting her assessment of moderate limitations, and upon the opinions of the state agency reviewer.

With regard to the ALJ's physical RFC assessment, Plaintiff makes but one undeveloped argument in a single sentence of her brief: "The ALJ states that 'new evidence at the hearing level convinced the undersigned that the claimant only has the capacity for sedentary exertional level work that is simple and repetitive,' but fails to point to or discuss this new evidence." (Pl. Br. 12) (citing (R. 21)). Plaintiff does not explain why in her view it was necessary for the ALJ to "point to or discuss this new evidence." The court finds no error.

The statement quoted by the Plaintiff was made in the ALJ's explanation of why his physical RFC assessment was different than that assessed by a state agency reviewer, Dr. Legler. (R. 21). The ALJ noted Dr. Legler opined that Plaintiff was able to perform light work. Id. (citing Ex. 8F (R. 210-19) (lift twenty pounds occasionally, stand and/or

_____

with the other record medical evidence, and with the opinions of the state agency reviewer." Supra, at 14. Dr. Allen's report is a part of the "other record medical evidence" which the ALJ considered in his evaluation of the weight to be accorded Dr. Brewer's opinion, and upon which the state agency reviewer relied in forming his opinion with which the ALJ agreed.

walk about six hours in an eight-hour workday)).  He explained his contrary determination that Plaintiff can stand and/or walk only two hours in an eight-hour workday by explaining that he found Plaintiff's weight precludes standing and/or walking six hours in a workday.  (R. 21).  He explained why he found Plaintiff was limited to sedentary work by stating, "new evidence at the hearing level convinced the undersigned that the claimant only has the capacity for sedentary exertional level work that is simple and repetitive."  Id.  Although Plaintiff is correct in stating that the ALJ did not "point to or discuss this new evidence," a fair reading of the decision in light of the record as a whole and the transcript of the hearing reveals that this new evidence consisted of both Plaintiff's confirmation at the hearing of morbid obesity, "5'7 ½"" tall and "about 450" pounds (R. 339), and Plaintiff's hearing testimony that she has trouble standing and walking.  (R. 340-41).  As the ALJ's discussion reveals, he followed the requirements of SSR 96-8p, recognized that his RFC assessment conflicts with the medical opinion of Dr. Legler, and explained why he did not adopt Dr. Legler's opinion.  The court finds no error in the decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 4th day of January 2011, at Kansas City, Kansas.

         s/ John W. Lungstrum    
         **John W. Lungstrum**
         **United States District Judge**